IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Jane Doe-4, | C/A No. 4:16-cv-03136-AMQ |
| Plaintiff, | **OPINION AND ORDER** |
| Horry County, South Carolina, Horry County Police Department, Saundra Rhodes, Scott Rutherford, William Squires, and Dale Buchanan, | |
| Defendants. | |

This matter comes before the Court on the Motion for Summary Judgment filed by Defendants Horry County and Horry County Police Department (collectively "Defendants") pursuant Federal Rule of Civil Procedure 56. (ECF No. 38.) The matter has been fully briefed, and the Court heard argument from counsel on May 21, 2015. For the following reasons, the Court hereby grants in part and denies in part Defendants' Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

Plaintiff Jane Doe-4 ("Plaintiff") filed this action on August 15, 2016, in the Horry County Court of Common Pleas. (ECF No. 1-1.) The case was removed to this Court on September 16, 2016. (ECF No. 1.) Generally, Plaintiff's complaint alleges causes of action against Horry County, the Horry County Police Department ("HCPD") and multiple individually named defendants alleging negligence/gross negligence related to the alleged actions of former HCPD Detective Troy Allen Large ("Detective Large") and 42 U.S.C. § 1983 claims against the individually named defendants. (ECF No. 1-1.) Plaintiff's complaint alleges a single cause of action against Defendants alleging negligence/gross negligence in the following particulars:

a. In failing to exercise reasonable or slight care to protect Plaintiff from harm at the hands of its personnel, agents, officers, and/or employees;

b. In failing to exercise reasonable or slight care to properly train and/or supervise its personnel, agents, officers, and/or employees;

c. In failing to exercise reasonable or slight care to draft and/or institute proper policy and procedure with regard to the hiring and evaluation of its police officers;

d. In failing to exercise reasonable or slight care to draft and/or institute proper policy and procedure necessary to ensure that members of the public are safe and protected from physical abuse and threatening behavior;

e. In failing to exercise reasonable or slight care to draft and/or institute proper policy and procedure that would lead to the discovery of inappropriate, threatening actions by its employees and prevent the same from occurring;

f. In failing to exercise reasonable or slight care to make periodic and proper investigations and take remedial action as might be necessary to prevent inappropriate and/or threatening actions;

g. In failing to exercise reasonable or slight care to take appropriate time to follow-up, review and/or check compliance with policy, state law and/or existing orders;

h. In failing to exercise reasonable or slight care to take steps necessary to remove, fire and/or terminate the services of staff and/or personnel, including Detective Large, when they had actual and/or constructive notice of his propensities;

i. In failing to exercise reasonable or slight care to properly supervise Detective Large;

j. In failing to exercise reasonable or slight care to provide Plaintiff with proper protection from abuse (both physical and mental) at the hands of their police officer when it had notice of their officer's propensities towards inappropriate and/or abusive behavior;

k. In conducting themselves in an egregious and arbitrary manner;

l. In threatening, physically assaulting and/or abusing Plaintiff;

m. In breaching their fiduciary duty of trust with regard to Plaintiff;

> n. In failing to follow and adhere to the local state and national standards, policies and procedures including the policies and procedures of the Horry County Police Department;
>
> o. In failing to follow and adhere to the policies and procedures of the Horry County Police Department regarding threatening behavior;
>
> p. In engaging in a pattern and practice of allowing and/or condoning inappropriate conduct on behalf of Horry County police officers;
>
> q. In failing to sufficiently monitor and supervise employees of the Horry County Police Department;
>
> r. In failing to have the appropriate policies and procedures in place to provide adequate supervision;
>
> s. In failing to exercise even slight care to protect the Plaintiff from harm.

(ECF No. 1-1.) Defendants filed their Motion for Summary Judgment on the negligence/gross negligence cause of action on October 27, 2017. (ECF No. 38.)

## **FACTUAL BACKGROUND**

Plaintiff came into contact with Detective Large in the Fall of 2014 (Confidential Exhibit 1, Page 21, Lines 19-23). At the time of Detective Large's initial contact with Plaintiff, she was actively using heroin. (Confidential Exhibit 1, Page 30, Lines 7-11). Detective Large initiated contact with Plaintiff on her phone and identified himself as a law enforcement official. (Confidential Exhibit 1, Page 24, Lines 1-4). Detective Large told Plaintiff that he needed to speak with her, although he did not make it clear to Plaintiff why he needed to speak with her. (Confidential Exhibit 1, Page 24, Line 5-13). Plaintiff believed that Detective Large wanted to speak with her in his capacity as a law enforcement officer regarding her use of heroin or about her brothers' recent run-ins with the police. (Confidential Exhibit 1, Page 79, Line 17 – Page 80, Line 16). Detective Large showed up at Plaintiff's residence shortly after making initial contact with her over the phone. (Confidential Exhibit 1, Page 24, Line 10-13). After Detective Large

arrived, he took Plaintiff to the grocery store to buy groceries. (Confidential Exhibit 1, Page 27, Line 1-11). On the trip to the grocery store, Detective Large indicated that he had accessed the police database and was aware of Plaintiff's prior arrest history and her history of sexual abuse as a child. (Confidential Exhibit 1, Page 27, Line 12 – Page 28, Line 6). After purchasing groceries for Plaintiff at the grocery store, Detective Large dropped Plaintiff off at her home. (Confidential Exhibit 1, Page 27, Lines 8-11).

The following day Detective Large again visited Plaintiff's residence. (Confidential Exhibit 1, Page 34, Lines 1-15). On this visit, he entered Plaintiff's bedroom. (Confidential Exhibit 1, Page 34, Lines 13-24). Plaintiff testified that Detective Large noticed her heroin needles on a bookshelf. *Id*. He then placed his service weapon directly next to the heroin needles and forced Plaintiff to submit to oral sex. (Confidential Exhibit 1, Page 34, Line 1 – Page 35, Line 21). In the months that followed, Detective Large contacted Plaintiff about participating in fights with other women; touched her inappropriately on multiple occasions; and took Plaintiff to purchase heroin which she transported in his police vehicle. (Confidential Exhibit 1, Page 36, Lines 13-17; Page 39, Lines 3-13; Page 43, Line 24 – Page 44, Line 9). Plaintiff entered a drug rehab facility in February of 2015, and she did not hear from Detective Large once she disconnected her cellular telephone. (Confidential Exhibit 1, Page 53, Line 3 – Page 54, Line 12). On September 15, 2016, the Horry County Grand Jury indicted Detective Large on eleven (11) counts of criminal sexual conduct and misconduct in office. (Confidential Exhibit 2).

## **LEGAL STANDARD**

A court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving

party, and a fact is material if it might affect the outcome of the suit under governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks and citations omitted). Therefore, at the summary judgment phase, the pertinent inquiry for the court is "whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. (internal quotation marks and citations omitted).

Once a party moves for summary judgment, the nonmoving party bears the burden of showing that there is a genuine issue of material fact for trial by offering sufficient proof in the form of admissible evidence. *Id*. A court cannot grant summary judgment "merely because the court believes that the movant will prevail if the action is tried on the merits." *Id.* (internal quotation marks and citations omitted). Thus, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Id.* (internal quotation marks and citations omitted). "A court improperly weighs the evidence by failing to credit evidence that contradicts some of its key factual conclusions, or by failing to draw reasonable inferences in the light most favorable to the nonmoving party." *Id.* (internal quotation marks and citations omitted).

The trial judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). Thus, at the summary

judgment phase, "[t]he pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal citation and quotation marks omitted).

## ANALYSIS

The central issue in this case and presented by the pending motions is whether Defendants are liable for the injuries caused by the alleged misconduct and even alleged criminal activity of Detective Large. Defendants claim that even if the evidence is construed in favor of Plaintiff, it involves conduct outside the scope of Detective Large's employment responsibilities and duties. Defendants argue they are entitled to summary judgment based on the South Carolina Tort Claims Act, Plaintiff's failure to provide sufficient evidence to establish a claim of negligent supervision, and the Public Duty Rule. The Court will address each argument in turn.

### A. South Carolina Tort Claims Act

The South Carolina Tort Claims Act ("the Act") provides that "[t]he State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages contained herein." S.C. Code Ann. § 15-78-40. The Act waives sovereign immunity while also providing for specific, enumerated exceptions limiting the liability of the state and its political subdivisions in certain circumstances. *Wells v. City of Lynchburg*, 501 S.E.2d 746, 749 (S.C. Ct. App. 1998). Pertinent to this case, under the Act a government entity is not liable for loss resulting from "employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-60(17).

Based on the Act, Defendants argue that they cannot be held vicariously liable for the intentional tortious conduct and alleged criminal activity of Detective Large. The Court agrees. Plaintiff's allegations relating to sexual assault and the facts presented in support of those allegations are outside the scope of Detective Large's employment. To the extent that Plaintiff attempts to hold Defendants vicariously liable for Detective Large's intentional tortious conduct or criminal conduct, Defendants' Motion for Summary Judgment is granted.

### B. Negligent Supervision

Turning to the negligent supervision claim, an employer has a duty to exercise reasonable care to control an employee who is acting outside the scope of his employment in certain circumstances. *Degenhart v. Knights of Columbus*, 420 S.E.2d 495, 496 (S.C. 1992). An employer may be liable for negligent supervision of an employee when his employee intentionally harms another if the plaintiff can show the employee (1) is on the employer's premises, is on premises he is privileged to enter only as an employee, or is using the employer's chattel; (2) the employer knows or has reason to know that he has the ability to control the employee; and (3) the employer knows or has reason to know of the necessity and opportunity to exercise such control. *Doe v. Bishop of Charleston*, 754 S.E.2d 494, 500 (S.C. 2014) (citing *Degenhart*, 420 S.E.2d at 496). This rule has been applied to find an employer liable for negligent supervision where an employee sexually assaulted a minor and the employer had at least some notice of the employee's prior inappropriate sexual behavior with another minor. *Doe by Doe v. Greenville Hosp. Sys.*, 448 S.E.2d 564, 567 (S.C. Ct. App. 1994). The employer's liability for a negligent supervision claim is direct, not derivative. *Doe v. Bishop of Charleston*, 754 S.E.2d at 500.

Here, Defendants claim that Plaintiff has failed to meet her burden of showing that there is a genuine issue of material fact for trial on the issue of whether Defendants knew or had reason to know of the necessity to exercise control of Detective Large prior to his alleged sexual assault of Plaintiff in the Fall of 2014. The Court disagrees. Plaintiff has set forth sufficient evidence to create a jury issue regarding Defendants' notice of their need to exercise control of Detective Large prior to Fall of 2014.[1]

First, Plaintiff presents evidence that Defendants were originally made aware of concerns regarding Detective Large's inappropriate contact with crime victims back in 2003. (Confidential Exhibit 3). The correspondence, authored by Detective Large's father-in-law, is addressed to Lieutenant Scott Rutherford and copies the HCPD Chief, a HCPD Captain and the Chairman of the Horry County Council. *Id*. The letter is a follow up on a meeting that Detective Large's father-in-law had with members of the HCPD to voice concerns about Detective Large's interactions with crime victims. *Id*. Specifically, the letter alleges that Detective Large spent several months nurturing a female crime victim in a case he had been tasked to investigate and had moved her into his home while his wife was out of town on business. *Id*. The letter further alleges that Detective Large used county vehicles for stalking purposes and that Detective Large had been tipped off that his in-laws were going to meet with HCPD officials regarding their concerns. *Id*. While Defendant argues that this letter constitutes inadmissible hearsay, the Court makes no finding about the ultimate admissibility of the letter at this time. However, it is at least possible that the letter is not inadmissible hearsay or that some hearsay exceptions might apply. For example, Plaintiff may argue the letter for the purpose of establishing notice to Defendants rather than to establish the truth of the matters asserted in the letter.

---

[1] During the hearing held on May 21, 2018, Defendants conceded that there are genuine issues of material of fact that need to be resolved regarding the negligent supervision issue.

Second, Plaintiff presents evidence that Defendants conducted an "in-house," off-the books investigation into Detective Large beginning in March 2014 after a confidential informant reported that Detective Large was frequenting the home of Jane Doe-1[2], a home under active investigation by the Horry County Drug Enforcement Unit as a suspected drug manufacturing location. Confidential Exhibit 8, Page 39, Lines 10-22; Confidential 9; Confidential Exhibit 13; Confidential Exhibit 15). Detective Large's supervisors did not interview Detective Large, Jane Doe-1 or the confidential informant as part of the "in-house" investigation, nor did they report the incident to the Office of Professional Standards/Internal Affairs. (Confidential Exhibit 8, Page 40, Line 24 – Page 43, Line 10). The investigation resulted in Detective Large's supervisors placing a GPS tracking device on Detective Large's police vehicle. (Confidential Exhibit 10, Page 65, Lines 2-25). However, it does not appear that HCPD took any further action concerning the allegations at that time. With regards to this "in-house" investigation, Plaintiff's law enforcement expert, Dr. Timothy Maher ("Dr. Maher"), opines that the report of Detective Large's visits to Jane Doe-1's residence should have initiated a formal investigation by the Office of Professional Standards or the South Carolina Law Enforcement Division. (Confidential Exhibit 6).

Third, Plaintiff presents evidence that the HCPD conducted a formal Internal Affairs investigation in June 2014 after Jane Doe-1 reported Detective Large's alleged sexual misconduct directly to HCPD after her arrest for drug related charges. (Confidential Exhibit 13). The HCPD closed the investigation as unfounded at the direction of Chief of Police Saundra Rhodes. (Confidential Exhibit 13). Although HCPD closed the investigation as unfounded, the

---

[2]Jane Doe-1 contacted the HCPD to report that she was the victim of a sexual assault on or about December 24, 2013. Detective Large was assigned to the case and first contacted December 27, 2013. (Confidential Exhibit 15). Jane Doe-1 alleges that Detective Large engaged in a course of inappropriate behavior including unwanted sexual advances and sexual assault over the following six months. (Confidential Exhibit 7).

investigative report indicated the following: (1) Detective Large admitted to having paid for Jane-Doe-1's prescription medications on several occasions; (2) Detective Large was frequenting Jane-Doe 1's home after her case was closed by Detective Large as unfounded; (3) Jane Doe-1 reported to a Horry County employee that Detective Large attempted to touch her inappropriately; and (4) that Detective Large had called Jane Doe-1's cell phone approximately 80 times between the period of December 2013 and May 2014. (Confidential Exhibit 13; Confidential Exhibit 14). Plaintiff's expert opines that these findings in the Internal Affairs Investigation were sufficient to place a reasonable supervisory officer on notice that Detective Large was abusing his authority as a law enforcement officer and that this abuse of authority was most likely related to his sexual desires. (Confidential Exhibit 6). Defendants argue that this investigation is irrelevant because HCPD ultimately closed this investigation as "unfounded." However, viewing this evidence in the light most favorable to Plaintiff, coupled with Plaintiff's expert report stating that the factual findings in the investigation were sufficient to place a reasonable supervisory officer on notice that Detective Large was abusing his authority with female victims, the Court finds that this evidence does go to the issue of notice to Defendants.

Finally, Plaintiff also presents evidence that HCPD received reports regarding Detective Large's alleged inappropriate behavior with Plaintiff herself. Plaintiff provides evidence that Plaintiff's mother spoke with a male police officer identifying himself as Detective Large's supervisor and reported that Detective large had been picking up her daughter and bringing her home high on drugs. (Confidential Exhibit 17, Page 52, Line 20 – Page 54, Line 25). She also expressed concerns that Detective Large "likes" her daughter. (Confidential Exhibit 17, Page 55, Lines 9-19). Detective Large's supervisor then took her name and informed Plaintiff's mother that he would look into the matter. (Confidential Exhibit 17, Page 55, Lines 20-23). While

Plaintiff's mother does not provide the exact date that she made the call to HCPD, it appears from the evidence that the call occurred sometime between the Fall of 2014 and February 2015 when Plaintiff checked into a drug rehab facility.

Therefore, viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences from the evidence presented in the light most favorable to Plaintiff, the Court finds that Plaintiff has met its burden in showing that there are genuine factual issues that can only be properly resolved by a finder of fact with regards to the negligent supervision claim asserted by Plaintiff.

### C. Public Duty Rule

To the extent that Defendants' motion seeks summary judgment relating to specific allegations set forth in Plaintiff's complaint on the basis of the Public Duty Rule, Defendants' motion is denied. In light of the Court's ruling that Defendants are not entitled to summary judgment on the negligent supervision portion of their general negligence/gross negligence claim, Defendants' other bases for summary judgment related to other specific allegations in Plaintiff's negligence/gross negligence claim are inapposite. *See Greene v. Life Care Ctrs., Inc.*, 586 F.Supp.2d 589, 594 (D.S.C.2008) ("A party is simply not entitled to summary judgment if the judgment would not be dispositive of an entire claim.").

### **CONCLUSION**

Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences from the evidence presented in the light most favorable to Plaintiff, the Court finds that Plaintiff has met her burden in showing that there are genuine factual issues that can only be properly resolved by a finder of fact with respect to the negligent supervision portion of Plaintiff's negligence/gross negligence claim. To the extent Plaintiff attempts to hold Defendant

vicariously liable for Detective Large's intentional conduct, the Defendants' Motion is granted.

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 38) is hereby GRANTED IN PART and DENIED IN PART.

    IT IS SO ORDERED.

/s/ A. Marvin Quattlebaum, Jr.
United States District Judge

July 2, 2018
Greenville, South Carolina