

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| JESSICA GIFFORD, § | |
|     Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO. 4:16-cv-03136-MGL |
| § | |
| § | |
| HORRY COUNTY POLICE DEPARTMENT, § | |
| and SAUNDRA RHODES, § | |
|     Defendants. § | |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW,
OR ALTERNATIVELY, FOR A NEW TRIAL,
OR ALTERNATIVELY, FOR A REDUCTION OF THE VERDICT,
AND GRANTING DEFENDANT'S MOTION FOR A SET-OFF**

**I.     INTRODUCTION**

Plaintiff Jessica Gifford (Gifford) filed this lawsuit in the Horry County Court of Common Pleas against Defendants the Horry County Police Department (HCPD) and Saundra Rhodes (Rhodes) (collectively, Defendants), along with several other defendants, who have since been dismissed.

Rhodes was the Chief of HCPD during the relevant time period. Gifford alleged violations of her constitutional rights against Rhodes, 42 U.S.C. § 1983, and a state law claim of negligence/gross negligence against HCPD.

Defendants removed the case to this Court. The Court has federal-question jurisdiction over Gifford's federal claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over her state claim in accordance with 28 U.S.C. § 1367.

Pending before the Court is HCPD's motion for judgment as a matter of law in accordance with Fed. R. Civ. P. 50(b), or alternatively, for a new trial under Fed. R. Civ. P. 59(a), or alternatively, a reduction of the verdict pursuant to Fed. R. Civ. P. 59(e). HCPD also moves for a set-off. Having considered the motions, the response, the reply, the record, and the relevant law, the Court will deny HCPD's motion for judgment as a matter of law, for a new trial, and for a reduction of the verdict, and grant the motion for a set-off.

## II.     FACTUAL AND PROCEDURAL HISTORY

Gifford's negligence/gross negligence claim against HCPD, as well as her constitutional claim against Rhodes, relate to the illegal and inappropriate actions of HCPD's former detective, Troy Allen Large (Large).

Three of the individually named original defendants were dismissed pre-trial as a result of a negotiated settlement agreement in the amount of $125, 000.

The jury in this matter rendered a verdict in favor of Gifford on her negligence claim against HCPD in the amount of $500,000. It determined Gifford proved three occurrences of negligence. The jury also found for Gifford on her constitutional claim against Rhodes, and awarded her nominal damages in the amount of $1.

HCPD subsequently filed a motion for judgment as a matter of law, or alternatively, for a new trial, or alternatively, for a reduction of the verdict. HCPD also filed a motion for a set off. Gifford then filed a response, and HCPD filed a reply.

The Court, now having been fully briefed on all the relevant issues, is prepared to adjudicate HCPD's motions.

III.    **DISCUSSION AND ANALYSIS**

   A.    *Whether HCPD is entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b)*

      *1.    Standard of Review*

"Rule 50(b) permits a party to bring a renewed motion for judgment as a matter of law after the jury has rendered its verdict." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 279 (4th Cir. 2021). The standard of review for the Court's consideration of a Rule 50(b) motion is generally the same as the standard of review for a Rule 56 summary judgment motion. *Brown v. CSX Transp., Inc.*, 18 F.3d 245, 248 (4th Cir.1994).

"To grant the motion[,] the district court must examine the evidence in the light most favorable to the non-moving party and determine whether a reasonable trier of fact could draw only one conclusion from the evidence." *Id*. (citation omitted) (internal quotation marks omitted). In other words, the Court should grant a Rule 50(b) motion only if the Court "determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings." *S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 532 (4th Cir.2002) (quoting *Konkel v. Bob Evans Farms, Inc.*, 165 F.3d 275, 279 (4th Cir.1999)).

      *2.    Discussion and Analysis*

The gist of HCPD's claimed basis for its entitlement to judgment as a matter of law is that it was unaware of Large's misbehavior and misconduct during the relevant time period. Gifford, however, claims that she "set forth substantial evidence by and through . . . HCPD's own employees,

3

witnesses, and internal documents showing that . . . HCPD was placed on actual notice as early as 2003 that . . . Large was forming inappropriate, sexual relationships with members of the public through the course of his employment with . . . HCPD." Gifford's Response at 1-2. Gifford has the better argument. No plausible assessment of the evidence under the Rule 50(b) standard can lead to a contrary conclusion.

For instance, as detailed by Gifford, "[t]he jury heard testimony from Kenneth Evans, the father-in-law of . . . Large, placing . . . HCPD on direct notice that . . . Large formed an inappropriate, sexualized relationship with a crime victim and moved her into his martial home." *Id*. at 2. "This testimony was corroborated by his letter, dated July 7, 2003, that was served on HCPD and contained within the Department's files." *Id.*

"The jury [also] heard testimony and received exhibits revealing that on March 13, 2014, an 'in-house,' off-the-books investigation was conducted at the request of two of . . . Large's supervisors, Captain Dale Buchanan and Lieutenant Chip Squires." *Id*. at 3. "The investigation was based upon reports that Large was romantically involved with [a crime victim], conduct which . . . HCPD employees verified would be both improper and illegal." *Id*.

In addition, "[a] 'formal' Internal Affairs investigation took place in June of 2014 after [a crime victim] specifically reported . . . Large's sexual misconduct directly to . . . HCPD." *Id*. at 4.

Further, "the jury heard testimony from [Gifford's] mother . . . [who] testified that she became suspicious when her daughter returned home from visiting with . . . Large visibly high on drugs." *Id*. at 5. "She testified that she contacted Defendant HCPD and asked to speak with . . . Large's supervisor." *Id*. "She spoke with a male officer who identified himself as Detective Large's

supervisor." *Id*. "She then reported that Detective Large had been picking up her daughter and bringing her home high on drugs." *Id*.

Although HCPD questions the admissibility of some of this evidence, the Court stands by its earlier evidentiary rulings on these matters.

In sum, there is substantial admissible evidence upon which a reasonable jury could return a verdict against HCPD and in favor of Gifford. *See Price v. City of Charlotte*, 93 F.3d 1241, 1249–50 (4th Cir.1996) (holding that the Court may not substitute its judgment for that of the jury and must uphold the verdict if there is evidence upon which a reasonable jury could return a verdict in favor of the nonmoving party.). Therefore, HCPD's motion for judgment as a matter of law will be denied.

### B.     Whether HCPD is entitled to a new trial in accordance with Fed. R. Civ. P. 59(a)

#### 1.     Standard of Review

Pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, the Court "may weigh the evidence and consider the credibility of the witnesses and, if [she] finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, [she] must set aside the verdict, even if supported by substantial evidence, and grant a new trial." *Poynter by Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir.1989).

To order a new trial the jury verdict must be against the great weight, not just a preponderance, of the evidence. *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir.1982).

#### 2.     Discussion and Analysis

First, HCPD contends the Court should grant them a new trial because, based on a lack of evidence, the jury's $500,000 verdict was excessive. Gifford, of course, disagrees.

"[A] district court sitting in diversity must apply state law standards when it considers a Rule 59(a) motion for a new trial based upon the alleged excessiveness of the jury's compensatory damage award." *Konkel*, 165 F.3d at 280.

As per South Carolina law, "[a] new trial absolute should be granted only if the verdict is so grossly excessive that it shocks the conscience of the court and clearly indicates the amount of the verdict was the result of caprice, passion, prejudice, partiality, corruption, or other improper motives." *Wright v. Craft*, 640 S.E.2d 486, 505 (S.C. Ct. App. 2006) (citation omitted) (internal quotation marks omitted).

The Court explained in its Jury Instructions that

> [t]he amount of actual damages is that amount of money that'll put the injured person in as near the same position as she would have been in had she not been injured. In other words, damages means the amount of money that'll reasonably and fairly compensate . . . Gifford for her damages.
>
> In this situation, you may consider the amount that would be necessary to make . . . Gifford whole with respect to any out-of-pocket loss and other monetary harms. You may also consider injuries such as impairment of reputation, personal humiliation, and mental anguish and suffering.

Jury Instructions at 15.

There is overwhelming credible evidence in the record establishing that Gifford experienced loss of enjoyment of life, mental anguish, extreme despair and hopelessness as a result of Large's sexual abuse. She also "suffers from PTSD" and has "received extensive counseling and therapy through multiple impatient drug treatment programs in connection with the sexual assaults she endured as the hands of . . . HCPD's employee, . . . Large." Gifford's Response at 9. Thus, the Court is unable to agree that the jury's $500,000 verdict was excessive based on a lack of evidence.

HCPD also contends the $500,000 jury verdict is excessive because Gifford "presented no evidence of any proximate causal connection between any alleged negligent training, supervision, or retention of Large and any damages allegedly sustained by [her]."  HCPD's Motion at 9.

On the issue of proximate case, the Court instructed the jury as follows:  "Concerning the term 'proximate cause,' if . . . [HCPD's] acts or omissions had such an effect in  producing . . . Gifford's injury or injuries that reasonable persons would regard it as being a cause of the injury or injuries, then the act or omission is a proximate cause of . . . Gifford's damages."  Jury Instructions at 7-8.

The Court discussed above that HCPD was on notice of Large's misbehavior and misconduct.  And, there can be no reasonable objection to the jury's conclusion that "[HCPD's] acts or omissions had such an effect in producing . . . Gifford's injury or injuries that reasonable persons would regard it as being a cause of the injury or injuries, [such that HCPD's] act or omission is a proximate cause of . . . Gifford's damages."  *Id*.  Therefore, it would be improper for the Court to rule that there is no causal connection between HCPD's negligence and Gifford's damages.

Simply put, the jury's $500,000 "verdict is [not] so grossly excessive that it shocks the conscience of the [C]ourt[.]"  *Wright*, 640 S.E.2d at 505.  What, instead, shocks the Court is HCPD's statement that there was "no evidence tending to establish any physical encounters between [Gifford] and Large other than [Gifford's] own testimony[,]"  HCPD's Motion at 8-9.  It earlier stated that, "[o]ther than [Gifford's] own testimony, [she] presented no additional evidence or witness testimony tending to establish any physical encounters between her and Large."  *Id*. at 3-4.

No corroboration.  The inference is that Gifford's testimony alone is insufficient "to establish any physical encounters between her and Large."  *Id*.

The flimsy no-corroboration defense has too often protected guilty sexual predators and been the mantra of their enablers.  But, not here. Not in this case. Gifford bore witness to Large's misbehavior and misconduct.  And, a jury of her peers believed her. So does the Court. *See Poynter by Poynter*, 874 F.2d 219 at 223 (the Court "may weigh the evidence and consider the credibility of the witnesses[,]").

One need only tap into common sense and life experience to know that there are often just two eyewitnesses to sexual abuse:  the victim and the perpetrator.  Except, in this case, the perpetrator is dead.  So, there is just one eyewitness: Gifford.

* * * * *

Turning now to HCPD's second contention as to why it claims the Court should grant it a new trial:  irrelevant evidence and jury confusion.  This concerns evidence of Internal Affairs investigations and disciplinary actions against other HCPD employees.  Gifford, expectantly, takes issue with this argument, too.

The Court stands by its evidentiary rulings during the trial of this case.  HCPD opened the door to having the above-referenced evidence admitted by its insistence that it promptly and thoroughly investigated instances of misconduct.

HCPD also complains that Gifford's "counsel . . . argued during closing arguments that jury trials in the United States District Court are very rare, that this was a significant case, that [Gifford] had been waiting six years for justice, and that every law enforcement agency in South Carolina was eagerly waiting for the message they would send about whether the actions of HCPD were reasonable under the circumstances." HCPD's Motion at 10.  According to HCPD, "these arguments were not related to any claim of negligent training, supervision, or retention of Large and were offered only to anger and incite the passions of the jury." *Id*.

8

Three things: first, HCPD failed to object to Gifford's closing argument at trial. Second, this portion of Gifford's closing argument appears to be directed at Gifford's request for punitive damages. *See* Jury Instructions at 16 ("Punitive damages are intended . . . to serve as a deterrent to others and to the defendants not to engage in or repeat such conduct. These damages are awarded for the benefit of society and the public interest[.]"). And third, even if the remarks were improper, the Court is unconvinced it is enough to make the granting of a new trial under Rule 59(a) appropriate.

Consequently, for all these reasons, the Court will deny HCPD's Rule 59(a) new trial motion.

### C.     Whether HCPD is entitled to a reduction in the verdict pursuant to Fed. R. Civ. P. 59(e)

#### 1.     Standard of Review

"A Rule 59(e) motion may . . . be granted [only] in three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012).

#### 2.     Discussion and Analysis

HCPD moves, pursuant to Fed. R. Civ. P. 59(e), that the verdict in favor of Gifford be reduced from $500, 000 to $300,000. Although HCPD fails to say so, it appears the motion is filed to correct what it thinks to be "a clear error of law[.]" *Id*. Gifford opposes the motion.

HCPD cites to S.C. Code § 15-78-120(a) in support of its motion. That statute provides, in relevant part, that "no person shall recover in any action or claim brought hereunder a sum exceeding three hundred thousand dollars because of loss arising from a single occurrence regardless of the number of agencies or political subdivisions involved."

As the Court instructed the jury "[a]n occurrence is defined as an unfolding sequence of events that proximately flow from a single act of negligence." Jury Instructions at 10. The Court further directed the jury that "Gifford ha[d] the burden of proving that each act of negligence was separate and independent for [them] to find that more than one occurrence occurred." *Id*.

The jury found three occurrences of HCPD's negligence. The evidence and the applicable law overwhelmingly supports that finding and forecloses any contention otherwise. HCPD's argument to the contrary is thus unavailing.

HCPD also contends that "the verdict form does not reflect what portion of the $500,000 verdict is attributable to what 'occurrence' and what 'loss.'" HCPD's Reply at 3. According to HCPD, "[i]t is possible that all of the damages were caused by just one of the three 'occurrences' found by the jury. It is also just as possible that one or more of the occurrences caused damages in excess of $300,000." *Id*. Thus, according to HCPD, the jury verdict form is defective because it failed to detail "what each occurrence was and . . . what was the 'loss,' if any, that arose from each occurrence found." HCPD's Reply at 7.

HCPD fails, however, to cite to any binding authority that has adopted this approach to jury verdicts in cases such as this. And, the Court has searched in vain to find one.

Nevertheless, HCPD does point to a state trial court order that it thinks supports its arguments. In the trial court's order granting the defendant's motion for a remittitur, it stated that it "conclude[d] that the Plaintiff has proven a single occurrence and, accordingly, the verdict must be reduced to a single statutory cap of $300,000 in accordance with the mandates of S.C. Code § 15-78-120(a)." *Larson v. South Carolina Dep't of Corrections*, No. 2019-CP-20-0241 at 6 (Fairfield Cty, S.C., Feb. 10, 2022).

But, it does not stop there. In dicta, the trial goes on to state the following:

10

> Clearly, a trial judge may not speculate as to the jury's verdict, particularly on questions that jury was never asked to answer on the verdict form. . . . In this case, the jury was asked to return a general verdict and to state a number of occurrences. The jury did not tell this Court – because it was not asked to do so – what each occurrence was and, even more importantly, what was the "loss," if any, that arose from each occurrence found. The specific language of Section 15-78-120(a) requires this Court to determine the award for the "loss arising from" each occurrence and then to reduce any such award that exceeds $300,000 to the statutory cap. Based on the absence of that needed information from the jury, the Court cannot award more than one cap of $300,000[.]

*Id*. at 7. The Court is unpersuaded by this dicta.

As an aside, the Court notes that the attorney for the prevailing party in a state court motion hearing often writes a proposed order adjudicating the motion. One of the attorneys for HCPD was the attorney for the prevailing party in the *Larson* case. Thus, not surprisingly, much of the language in HCPD's motion tracks word for word the language in the *Larson* order, albeit without any citation to the *Larson* order.

As HCPD states, "[t]he leading case on the application of the term 'occurrence' under the Tort Claims Act is the South Carolina Supreme Court's decision in *Boiter v. South Carolina Dep't of Transp.*, 712 S.E.2d 401 (2011)." HCPD's Motion at 15. But, *Boiter* suggests a different result than what HCPD and the trial court in *Larson* do.

First, some background: the Boiters' motorcycle collided with an automobile when they entered an intersection at the same time. *Id*. at 402. The red signal light bulbs in the traffic signal for the other vehicle had burned out. *Id*.

The Boiters brought a negligence claim against the South Carolina Department of Transportation (DOT) for its failure to have a relamping policy in place; and against the South

11

Carolina Department of Public Safety (DPS) for its failure to send a trooper to direct traffic at the intersection after it was notified the red light was out. *Id*.

The jury returned a verdict in favor of the Boiters and awarded them $1.875 million each for their claims against DOT and DPS. *Id*. 402-03.  No separate or special request was made to apportion liability between the DOT and DPS.

The trial court subsequently granted DOT and DPS's motion to reduce the verdict to a total of $600,000, $300,000 for each of the plaintiffs. *Id*. at 403. The Boiters appealed. *Id*.

The Supreme Court determined that there were "two independent and separate acts of negligence occurred here—one by [DOT] and one by [DPS]." *Id. at* 406. As such, each act of negligence by DOT and DPS "was a separate occurrence entitling the Boiters to a combined verdict of 1.2 million dollars[.]" *Id*. at 407.

In *Boiter*, no effort was made to parse out what loss was attributable to DOT and what loss was attributable to DPS–either by the jury or by the Supreme Court.  Instead, the Supreme Court merely multiplied the DOT's and DPS's two occurrences of negligence by the two plaintiffs, and then multiplied that number, four, by the $300,000 cap on damages for each occurrence. That equaled a total capped award of $1.2 million.

Applying the holding of *Boiter* to this case, the Court multiplies HCPD's three occurrences of negligence by the one plaintiff, and then multiplies that number, three, by the $300,000 cap on damages for each occurrence, which equals a capped award of $900,000. Because the $500,000 jury award is less than the $900,000 cap, the $500,000 jury award will stand.

Thus, in light of the holding in *Boiter*, the Court will deny HCPD's Rule 59(e) motion to reduce the jury verdict to $300,000.

### D.     *Whether HCPD is entitled to a set-off*

#### 1.     *Standard of Review*

"A nonsettling defendant is entitled to credit for the amount paid by another defendant who settles." *Smalls v. South Carolina Dept. of Educ.*, 528 S.E.2d 682, 688 (S.C. Ct. App. 2000) "The reason for allowing such a credit is to prevent an injured person from obtaining a second recovery of that part of the amount of damages sustained which has already been paid him. Or differently stated, it is almost universally held that there can be only one satisfaction for an injury or wrong." *Id*. (citation omitted) (internal quotation marks omitted) (alteration marks omitted).

#### 2.     *Discussion and Analysis*

HCPD maintains it is entitled s entitled to a set-off for the $125,000 in settlement funds Gifford received from three defendants with whom she previously settled her claims. Gifford agrees that this is proper.

The Court also thinks this is appropriate. Therefore, it will grant HCPD's motion for a $125,000 set-off. Therefore, the $500,000 judgment will be reduced to $375,000.

### IV.    CONCLUSION

In light of the foregoing discussion and analysis, Gifford's motion for judgment as a matter of law, for a new trial, and a reduction of the verdict is **DENIED**; and its motion for a set-off is **GRANTED**. Accordingly, the judgment against HCPD shall be reduced from $500,000 to $375,000.

**IT IS SO ORDERED**.

Signed this 29th day of March, 2023, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE