

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### FLORENCE DIVISION

| | | |
|---|---|---|
| JESSICA GIFFORD, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:16-cv-03136-MGL |
| | § | |
| | § | |
| HORRY COUNTY POLICE DEPARTMENT, | § | |
| and SAUNDRA RHODES, | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER
### GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS,
### AS PROVIDED HEREIN

## I.    INTRODUCTION

Plaintiff Jessica Gifford (Gifford) filed this lawsuit in the Horry County Court of Common Pleas against Defendants the Horry County Police Department (HCPD) and Saundra Rhodes (Rhodes) (collectively, Defendants), along with several other defendants, who have since been dismissed.

Rhodes was the Chief of HCPD during the relevant time period.  Gifford alleged violations of her constitutional rights against Rhodes, 42 U.S.C. § 1983, and a state law claim of negligence/gross negligence against HCPD.

Defendants removed the case to this Court.  The Court has federal-question jurisdiction over Gifford's federal claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over her state claim in accordance with 28 U.S.C. § 1367.

Pending before the Court is Gifford's motion for attorneys' fees and costs. Having considered the motion, the response, the replies, the record, and the relevant law, the Court will grant Gifford's motion for attorney fees and costs, as modified herein.

## II.    FACTUAL AND PROCEDURAL HISTORY

Gifford's negligence/gross negligence claim against HCPD, as well as her constitutional claim against Rhodes, relate to the illegal and inappropriate actions of HCPD's former detective, Troy Allen Large (Large).

The jury in this matter rendered a verdict in favor of Gifford on both her negligence claim against HCPD, in the amount of $500,000, and her constitutional claim against Rhodes, in the amount of one dollar.

Gifford subsequently filed a motion for attorneys' fees and costs, Defendants filed a response in opposition to the motion, and Gifford filed a reply in support of the motion. The motion seeks attorneys' fees and costs only as to Gifford's constitutional claim against Rhodes.

Thereafter, Gifford filed documentation of her costs, Defendants filed their objections, and Gifford filed a reply. The parties also briefed the Court on the untimeliness of Gifford's motion.

The Court, now having been fully briefed on all the relevant issues, is prepared to adjudicate Gifford's motion.

## III.    DISCUSSION AND ANALYSIS

### A.    *Whether Gifford is entitled to her request for an award of attorneys fees*

#### 1.    *Whether the Court will excuse the untimeliness of Gifford's motion*

Before the Court considers the merits of Gifford's request for attorneys' fees, it must first deal with the untimeliness of it.

Federal Rule of Civil Procedure 54 governs motions for attorneys' fees as well as the time within which such motions for fees must be filed. Rule 54(d)(2)(B) provides that, "[u]nless a statute or a court order provides otherwise, the motion [for attorney fees] must[ ] be filed no later than [fourteen] days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B).

Nevertheless, "[t]he . . .[C]ourt may, for good cause, extend the . . . deadline 'on motion made after the time has expired if the party failed to act because of excusable neglect.'" *SlepTone Entm't Corp. v. Karaoke Kandy Store, Inc*., 782 F.3d 313, 316 (6th Cir. 2015) (quoting Fed. R. Civ. P. 6(b)(1)(B)); *see also Allen v. Murph*, 194 F.3d 722, 723-24 (6th Cir. 1999) (noting that, when a party failed to timely file its motion for attorney fees and failed to request an enlargement of the time period before such time expired, "the district court could permit a late filing only if the delay was the result of 'excusable neglect.'" (quoting Fed. R. Civ. P. 6(b)(1)(B)).

Judgement was entered in ths case on May 11, 2023. Thus, Gifford's motion for attorneys' fees were due on May 25, 2023. But, she failed to file them until June 3, 2023, nine days late.

Gifford contends she has established good cause to excuse her late filing on her motion. Defendants disagree.

Ironically, as an aside, the Court notes Defendants' response to the motion was due on June 17, 2023. Having been granted two extensions of time with the consent of Gifford, however, Defendants waited until July 15, 2023 to file their response, twenty-eight days after it was originally due and forty-two days after Gifford filed the motion.

3

"Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' [the Supreme Court has] conclude[d] that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993). "These include . . . the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id*.

Considering the factors set forth in *Pioneer Inv. Services Co.,* there is no danger of prejudice to Defendants in the Court's excusing Gifford's counsel's nine-day delay in filing her motion for attorneys' fees. The length of the delay and its potential impact on judicial proceedings are negligible.

The reason for the delay Gifford's counsel gives is that they had another six-day trial that immediately followed this one. Then, they state, when they returned to their offices, in preparing their motion, they were required to assemble the billing records of multiple attorneys.

Gifford's counsel do not dispute that the delay was within their control, but there is no evidence of any bad faith. For these reasons, the Court concludes the untimeliness of Gifford's motion for attorney fees was the result of excusable neglect, and will thus be excused.

### 2.    *Whether Gifford is entitled to any award of attorneys' fees*

According to Gifford, she is entitled to attorneys' fees under 42 U.S.C. § 1988(b). Section 1988(b) provides, in relevant part, that, "[i]n any action or proceeding to enforce a provision of section[ ] . . . 1983, . . . the [C]ourt, in its discretion, may allow the prevailing party . . .a reasonable attorney[s'] fee as part of the costs[,]" *Id*.

4

Defendants oppose Gifford's claim of attorneys' fees. Alternatively, they request the Court award a substantially reduced amount.

"The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citations omitted) (internal quotation marks omitted). The "special circumstances" exception is inapplicable here.

"Congress enacted [Section] 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process." *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986). "These victims ordinarily cannot afford to purchase legal services at the rates set by the private market." *Id*. Thus, "they are unable to present their cases to the courts." *Id*. (citation omitted) (internal quotation marks omitted).

As per 1988(b), Gifford must be a "prevailing party" to recover any attorneys' fees. Both parties agree she is the prevailing party in this matter. And, they both rely on *Farrar v. Hobby*, 506 U.S. 103 (1992), in support of their position as to whether Gifford is entitled to an award of attorneys' fees.

Each of the parties, however, highlights only the portion of *Farrar* that seemingly supports their positions. Nevertheless, the Court must find and cite to the law that supports the correct outcome.

Defendants center their argument around the portion of the *Farrar* opinion stating that, "[w]hen a plaintiff recovers only nominal damages . . . ,the only reasonable fee is usually no fee at

all." *Farrar*, 506 U.S. at 115.  Based on this, they contend Gifford is entitled to no award of attorneys' fees.

But,  "[b]ecause the Court in *Farrar* held that plaintiffs recovering only nominal damages *usually or often* will not be entitled to an award of attorney's fees, it is clear that such plaintiffs will at least sometimes be entitled to a fee award." *Mercer v. Duke University*, 401 F.3d 199, 203 (4th Cir. 2005).  Thus, the Fourth Circuit has rejected any argument that *Farrar* automatically precludes attorneys' fee awards in all nominal-damage cases.  *See, e.g., Clark v. Sims*, 28 F.3d 420, 425 (4th Cir.1994) (remanding fee award in nominal-damage case for reconsideration in light of plaintiff's limited success).

As the Fourth Circuit has observed, "[a]lthough the majority opinion in *Farrar* provides little guidance for courts considering whether an award of attorney's fees is warranted [in cases in which only nominal damages are awarded], Justice O'Connor in a separate concurring opinion addressed the question in more detail." *Mercer*, 401 F.3d at 203  "Justice O'Connor recognized . . . that not all nominal damages awards are de minimis.  Nominal relief does not necessarily a nominal victory make." *Id*. at 204 (citation omitted) (internal quotation marks omitted).

As such, Section 1988 serves as "a tool that ensures the vindication of important rights, even when large sums of money are not at stake, by making attorney's fees available under a private attorney general theory." *Farrar*, 506 U.S. at 122 (O'Connor, J., concurring).

Justice O'Connor "suggested that when determining whether attorney's fees are warranted in a nominal-damages case, courts should consider '[1] the extent of relief, [2] the significance of the legal issue on which the plaintiff prevailed, and [3] the public purpose served by the litigation'" *Id*. (quoting *Farrar*, 506 U.S. at 122 (O'Connor, J., concurring).

6

The Fourth Circuit employed these three factors in *Mercer* to consider whether the plaintiff, who received only nominal damages, was nonetheless entitled to an award of attorney's fees under section 1988. In doing so, it stated that "[w]e believe that the factors set forth by Justice O'Connor help separate the usual nominal-damage case, which warrants no fee award, from the unusual case that does warrant an award of attorney's fees." *Id.*

Gifford, not surprisingly, highlights Justice O'Connor's concurrence, and discusses these three factors, in support of her argument she is entitled to attorneys' fees. Defendants fail to provide any argument as to Justice O'Connor's framework.

The first consideration, "the extent of relief" factor, examines "the difference between the amount recovered and the damages sought[.]" *Jones v. Lockhart*, 29 F.3d 422, 424 (8th Cir. 1994). In *Jones*, the Eight Circuit, finding that this factor weighed in favor of granting of attorneys' fees, stated that, "although there is a discrepancy between the amount of damages sought and the amount recovered ($860,000 sought, $2 recovered), it pales in comparison to the discrepancy presented in *Farrar* ($17,000,000 sought, $1 recovered)." *Id.*

Turning to this case, as Gifford notes, absent from the trial strategy here was a high demand for monetary damages. In fact, Gifford's counsel declined to ask for any specific amount of actual monetary losses at trial. And, she neglected to offer any evidence of any actual monetary damages incurred for medical and/or mental health treatment.

Instead, according to Gifford, "counsel recognized throughout the trial that, due to the unique nature of this case, the focus of the civil rights claim was squarely on the vindication of the constitutional right of a young woman who was coerced into engaging in a sexual act with a deviant law enforcement officer who was almost three times her age." Gifford's Reply at 5.

In addition, counsel for Gifford requested and presented to the Court a nominal damages jury charge. Thus, evidently, recovery of a large sum of money was neither the theme, the trial strategy, nor the goal of Gifford's case against Rhodes.

Consequently, it seems to the Court that the jury's favorable nominal damage verdict, which underscores that Rhodes is liable to Gifford for Large's unconstitutional, unlawful, and unwanted, sexual touching and/or sexual assault of her, is exactly the relief Gifford was seeking. *See Farrar*, 506 U.S. at 121 (O'Connor, J. concurring) ("[A]n award of nominal damages can represent a victory in the sense of vindicating rights even though no actual damages are proved.")

Besides, because Gifford failed to provide any evidence of actual damages, the jury's award of just nominal damages is perfectly understandable.

All things considered, the Court is unable to say the nominal damages award in this case is fatal to Gifford's request for attorneys' fees. In fact, she got what she wanted: judgment against Rhodes saying Rhodes had violated her constitutional rights. Therefore, this factor weighs in favor of Gifford's request for attorneys' fees.

The second factor to consider is "the significance of the legal issue on which the plaintiff prevailed." *Id*. at 122. "This factor is concerned with the general legal importance of the issue on which the plaintiff prevailed." *Mercer*, 401 F.3d at 206. The constitutional right that is the subject of Gifford's constitutional claim is the right to bodily integrity.

Over 130 years ago, the Supreme Court opined that "[n]o right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251 (1891).

As Gifford aptly states, she "established at trial that [Rhodes] was legally responsible for the unconstitutional and unlawful acts of her subordinate officer who violated [her] Fourteenth Amendment right to bodily integrity." Gifford's Reply at 7.

Inasmuch as "[n]o right is held more sacred[ ]" than Gifford's right to bodily integrity, *Union Pac. R. Co.*, 141 U.S. at, 251, and the jury found that Rhodes is liable for Large's violation of that right, Gifford succeeded on a significant legal issue. Accordingly the second factor is Justice O'Connor's concurrence in *Farrar* also weighs in favor of granting Gifford's request for attorneys' fees.

"The final factor [the Court] must consider is whether the litigation served a public purpose, as opposed to simply vindicating [Gifford's] individual rights." *Mercer*, 401 F.3d at 207. Gifford's "success might be considered material if it also accomplished some public goal other than occupying the time and energy of counsel, court, and client." *Farrar*, 506 U.S. at 121–22 (O'Connor, J., concurring).

Gifford contends that "[t]he jury's finding in this case sends a message to the current executive staff of the Horry County Police Department and to every county-wide law enforcement agency in the state that they cannot turn a blind eye to evidence of predatory and unconstitutional behavior by one of their own officers." Gifford's Reply at 8-9. According to Gifford, "[t]his is particularly true when the predatory behavior by officers threatens the 'most sacred' of our Constitutional rights, as it did in this case." *Id* at 9.

The evidence in the record overwhelmingly shows that Rhodes knew, or should have known, about Large's misbehavior and misconduct. But she failed to adequately address it.

Although the monetary award for Rhodes's constitutional violation is nominal, the verdict against her for her constitutional violation is huge.  And, it will likely reverberate across the law enforcement agencies of this state for years to come with the resounding message that the top brass must be diligent in monitoring and appropriately responding to their officers' unconstitutional misbehavior and misconduct.

Thus, because the Court is of the strong opinion that Gifford's civil rights claim against Rhodes serves an important public purpose, this factor also weighs in favor of Gifford's request for attorneys' fees..

So, all three of Justice O'Connor's considerations favor a conclusion that Gifford is entitled to an award of attorney fees.  But, for how much?

### 3.     Whether Gifford's is entitled to an award for attorneys' fees in the amount of  $878,467.80

Gifford seeks attorneys' fees in the amount of  $878,467.80.  Here is a breakdown:

| Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|
| James B. Moore III, Esq. | 690.40 | $450 | $310,680.00 |
| Scott C. Evans, Esq. | 605.11 | $450 | $272,299.50 |
| Amy Lawrence, Esq. | 465.752 | $400 | $186,300.80 |
| Justin Lovely, Esq. | 108.125 | $400 | $43,250.00 |
| Sarah Austin, Esq. | 144.5 | $250 | $36,125.00 |
| Julie Long, Paralegal | 238.5 | $125 | $29,812.50 |
| Total hours for Attorneys | 2,013.887 | | |
| Total fees for Attorneys and Paralegal | | | $878,467.80 |

"In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Information Services*, LLC, 560 F.3d 235, 243-44 (4th Cir. 2009).  When deciding what constitutes a "reasonable" number of hours and rate, the Fourth Circuit has instructed that the Court's discretion should be guided by the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's Inc*, 577 F.2d 216, 226 n. 28 (4th Cir.1978).

Although the Court considers all of the factors, they need not be strictly applied in every case inasmuch as all of the factors are not always applicable.  *See E.E.O.C. v. Service News Co*., 898 F.2d 958, 965 (4th Cir. 1990) (stating that seven of the twelve factors were inapplicable in the matter).

Gifford has supplied the Court with time records and affidavits substantiating her request for attorneys' fees, along with an in depth discussion of the relevant above-listed factors.  Defendants addressed just a few of those considerations.

### a.     *"the time and labor expended"*

This consideration weighs in favor of granting Gifford's petition for attorneys' fees.

"[T]he fee applicant bears the burden of . . . documenting the appropriate hours expended and hourly rates."  *Hensley*, 461 U.S. at 437.  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Id*. at 433.

Gifford contends, during the six years her lawsuit was pending, her "counsel submitted significant briefing on several complex and important constitutional legal issues that go to the heart of the protections guaranteed by the Fourteenth Amendment, developed an extensive factual record, identified, prepared, and presented highly qualified expert witnesses, identified and interviewed a series of fact witnesses, and zealously represented [Gifford] over [six] days of jury trial." Gifford's Motion at 7.

According to the affidavits of two of Gifford's counsel, they "participated in twelve depositions, multiple hearings, and motions in this matter since 2016. To date, there are [240] ECF filings in this case. . . . The pretrial and trial work was voluminous, extensive, and laborious." Scott E. Evan's Affidavit ¶ 4; James B. Moore III's Affidavit ¶ 4. Counsel also participated in three mediations.

Gifford, "has not sought compensation for considerable time that would otherwise ordinarily be billable in the course of representation to a private client, such as time for communications including regular telephone conferences with opposing counsel, regular correspondence and emails with opposing counsel, and regular correspondence and emails with co-counsel." Gifford's Motion at 6.

"Additionally, for a majority of the hours expended in discovery and depositions, [Gifford's] Counsel reduced the number of hours . . .to evenly distribute the time between the [other] cases handled by her attorneys during parts of this litigation." *Id*.

"Plaintiff's counsel, of course, is not required to record in great detail how each minute of [her or] his time was expended. But at least counsel should identify the general subject matter of [her or] his time expenditures." *Hensley*, 461 U.S. at 437. Gifford's counsel has done so here.

12

Defendants lodge several objections to the amount of time Gifford claim for attorneys' fees. The Court will address them in the order Defendants raised them.

First, in a footnote, Defendants argue that "the Court has been given insufficient information by [Gifford] to identify fees attributable to work on the state law claim." Defendants' Response at 6 n.2. But, they neglect to develop the argument. Consequently, this "perfunctory and undeveloped claim [by Defendants is deemed] waived." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 n. * (4th Cir. 2014).

Besides, inasmuch as both Gifford's state claim and constitution claim concern the supervisory liability for Large's misbehavior and misconduct, and both arise from the same related and interconnected nucleus of operative facts such that they are somewhat inextricably connected, it appears to the Court that it would be impossible to separate the fees for the two separate claims.

Second, Defendants complain of Gifford's counsel "claiming the fees for three and sometimes four and five lawyers for the same task[ ]" without justification. Defendants' Response at 10.

There is no per se rule the Court is aware of that sets forth the maximum number of attorneys one should have participating in trials, depositions, or other case-related matter. On some tasks, such as legal research and trial preparation, billing by multiple attorneys is both common and expected.

As to Gifford's having three attorneys at trial, inasmuch as the Court observed the three of them to have fully participated and have been fulled engaged in all aspects of the trial, it is not up to the Court to say it was unnecessary to have them all there. After all, it seems improper to question Gifford's use of multiple attorneys, which likely contributed to her proving her case against Rhodes.

The Court has carefully reviewed Gifford's counsel's billing records as to this issue and finds the hours listed for multiple attorneys to be reasonable. There is just one caveat, however.

In several instances, Gifford bills for more than two attorneys at a deposition. Absent is any explanation as to why more than two attorneys were necessary. The Court, therefore, will not approve any fees for more than two attorneys at a deposition.

Third, Defendants question the awarding of attorneys' fees for attorneys not listed on the Court's docket. According to Defendants, Gifford "attempts to claim attorney's fees for two attorneys who are not even identified by this Court as counsel of record. Justin Lovely and Sarah Austin have never filed a notice of appearance, appeared at any matter in this litigation, nor signed any pleadings or motions on behalf of [Gifford]." Defendants' Response at 10.

But why does Defendant fail to cite to any legal support for the proposition that the Court should refrain from awarding attorneys' fees for these two attorneys? And, why has the Court been unable to locate any? The answer seems obvious: there is none. Thus, this argument appears to be unmoored to any legal authority.

Fourth, Defendants protest Justin Lovely's presence at Large's bond hearing although "Large is not a party to this lawsuit, and his bond hearing addressed no allegations against. . . Rhodes." *Id*. at 10-11. This argument does not merit discussion. Of course, Large's criminal liability for his misbehavior and misconduct when he was employed by Rhodes is related to her civil liability here. Thus, it was proper for Gifford's counsel to bill for this.

Fifth, Defendants also dispute the hours charged for Justin Lovely's meeting with an identified potential witness for Gifford, who was not called at trial. But, surely Rhodes's counsel would, and likely has, billed for meeting with a potential witness they failed to call to trial. The Court is unable to fathom anything improper about that.

Sixth, Defendants contend it is inappropriate to award attorneys' fees to Justin Lovely's and Sarah Austin's participation in an intensive weekend client preparation session on June 24-26, 2019.

According to Defendants, "[t]his case . . . was not tried in 2019, and neither of these attorneys tried it." *Id*. at 11.

But, Defendants well know the trial was originally scheduled for the summer of 2019; and it was proper for these two attorneys to help prepare the case for trial, even if they did not actually try the case. Preparing exhibits and witnesses are just two examples of this.

### b.    the novelty and difficulty of the questions raised

This consideration also weighs in favor of granting Gifford's request for attorneys' fees.

Proving that Rhodes was liable for a constitutional violation against Gifford was particularly demanding.

> To establish supervisory liability against . . . Rhodes for a constitutional violation, . . . Gifford must prove by a preponderance of the evidence:
> (1) that . . . Rhodes had (a) actual or (b) constructive knowledge, which is defined as knowledge that one using reasonable care or diligence should have, that . . . Large was engaged in conduct that posed an unreasonable risk of constitutional injury to citizens such as . . . Gifford;
> (2) that . . . Rhodes's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive conduct; and
> (3) that there was an affirmative causal link between . . . Rhodes' inaction and the constitutional injury suffered by . . . Gifford.              .

Jury Charge at 13-14. Nevertheless, although notoriously difficult, Gifford's counsel overcame Rhodes's qualified immunity and other motion for summary judgment claims and convinced the jury to find Rhodes had violated Gifford's constitutional rights.

### c.    the skill required to properly perform the legal services rendered

This factor, too, weighs in favor of the Court's granting Gifford's motion for attorneys' fees.

Again, this was a notoriously difficult and complex case. And, hats off to counsel for each party for performing so well.

As Gifford points out in her motion,

> The issues in the trial presented sophisticated legal questions that had to be proven to both the Court and communicated to the jury. Did . . . Large violate Jessica's 14th Amendment right to bodily integrity? Was the sexual assault consensual as . . . Rhodes's alleged? Did . . . . Rhodes have actual or constructive knowledge that . . . Large was engaged in conduct that posed a risk of constitutional injury to the Plaintiff? Was her response to this knowledge adequate? At each turn, Plaintiff was successful.

Gifford's Motion at 9. And, she was successful, in large part, thanks to her highly skilled attorneys.

### d.     the attorney's opportunity costs in pressing the instant litigation

This factor weighs in favor of Gifford's fee request, too.

Given the amount of time counsel expended on this case, a total of 2,013.887 hours, it is obvious counsel worked on this case at the exclusion of others. And, because Gifford's counsel took this case on a contingent basis, there was no guarantee of the amount of payment, if any, they would receive in payment. Consequently, Gifford's counsel's opportunity costs were quite high.

### e.     the customary fee for like work

This factor also favors Gifford's request.

"[D]etermination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (citation omitted) (internal quotation marks omitted). "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the 'prevailing market rates in the relevant community for the type of work for which he seeks an award." *Id*. (citation omitted) (internal quotation marks omitted).

"Examples of the type of specific evidence that [the Fourth Circuit has] held is sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson*, 560 F.3d at 245.

"Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the [Supreme] Court has nonetheless emphasized that market rate should guide the fee inquiry." *Id.* (citation omitted) (internal quotation marks omitted) (footnote omitted).

The Court has provided the per-hour-rates Gifford's counsel seeks in this action above. They range from $250 to $450. Gifford has provided evidence in the form of affidavits from two other highly respected members of the South Carolina bar, who litigate civil rights cases and attest to the outstanding abilities of Gifford's counsel. They support these rates.

Given this, along with the Court's own experience and knowledge of the market, the Court concludes these fees are reasonable. As such, it rejects Defendants' arguments to the contrary.

Although Defendants maintain that Gifford "presents no fee agreement showing that she agreed to any of the claimed rates," Response in Opposition at 7, Gifford's counsel took this case on a contingency basis. So, of course, there is no such fee agreement.

### f.      the attorney's expectations at the outset of the litigation

This factor favors the granting of Gifford's attorneys' fees request, as well.

Gifford states that "Counsel took this case with complete uncertainty as to the outcome and aware that few cases survive summary judgment and are successfully tried to verdict under 42 U.S.C. § 1983." Gifford's Motion at 10. And, she is correct.

In the Court's experience, most all Section 1983 cases are dismissed at either the motion to dismiss or the motion for summary judgment stage. Few survive past that. But, this one did. That is a huge credit to Gifford's counsel.

According to Gifford, "Counsel was dedicated to the notion that if Plaintiff was successful at trial, a finding of a 42 U.S.C. § 1983 violation against . . . Rhodes was well worth the uncertainty of the outcome." *Id.*

       **g.**      ***the time limitations imposed by the client or circumstances***

This factor is inapplicable to the facts of this case.

       **h.**      ***the amount in controversy and the results obtained***

This factor favors Gifford.

As discussed above, Gifford never asked for a particular amount of money for her constitutional claim against Rhodes. Instead, it appears she sought to have her claim for the harm done to her be acknowledged. And it was, with both a unanimous jury verdict finding a constitutional violation by Rhodes, and a Court that wholly agrees with the jury's determination..

       **i.**      ***the experience, reputation and ability of the attorney***

This factor heavily favors the granting of Gifford's motion as to both the number of hours billed, with the exception noted above, and the rate requested.

Counsel for both Gifford and Defendants did an outstanding job representing their clients at trial. They also all enjoy a great reputation and are a credit to the South Carolina Bar.

Gifford's attorneys are experienced in the field of civil rights litigation, which was evidenced at each step of this litigation. And, their reputations are sterling.

The Court has reviewed the many papers that Gifford's counsel submitted to the Court, heard their arguments, and closely observed their conduct at trial and their mastery of the subject matter. The Court finds their abilities in this area of the law to be unsurpassed.

       **j.**      ***the undesirability of the case within the legal community in which the suit arose***

This consideration weighs in Gifford's favor, too.

This case has all of the marks of an undesirable case. The facts that had to be proven were, to put it mildly, disgusting.

Although Gifford argued she had been harmed, as noted above, she had no medical bills to support her claims. Only a few very skilled group of attorneys would take on a case such as this, and

even fewer would not only survive a motion for summary judgment, but also win a verdict on the constitutional claim.

### k.    the nature and length of the professional relationship between attorney and client

This factor has no bearing on the Court's consideration of Gifford's motion.

Gifford filed this lawsuit on September 16, 2016.  Her relationship began shortly before that, in August 2016.  Scott E. Evan's Affidavit ¶ 4; James B. Moore III's Affidavit ¶ 4.  The trial concluded a little over five and a half years later, on May 9, 2022.

The relationship between Gifford and her counsel commenced because of her need for representation in this matter.  There is no indication that, with the end of this case, their relationship will continue.

### l.    attorneys' fees awards in similar cases

This factor weighs in favor of Gifford's requested rate and the number of hours charged.

The Court has reviewed the cases Gifford set forth and considered its own experience in complex and difficult matters such as this.  As such  the Court is of the opinion that the attorneys' fees, both the rates and the number of hours that Gifford seeks, with the exception noted above, are comparable to those fees awarded in similar actions.

As an example of the total fee award, in *Mercer v. Duke University*, 301 F. Supp. 2d 454 (M.D.N.C. 2004), the district court awarded the plaintiff $349,243.96 in attorney fees, *id*. at 470, although she received "only one dollar in compensatory damages[,]" *id.* at 457.  The decision was later affirmed by the Fourth Circuit:  *Mercer v. Duke University*, 401 F.3d at 212.

Adjusted for inflation, that $349,243.96 would equal $567,314.00 in today's dollars**.** *See* https://data.bls.gov/cgi-bin/cpicalc.pl?cost1=349%2C243.96&year1=200103&year2=202302*, Jan. 2004 to February 2023 (last visited March 29, 2023).

* * * * *

The total of attorneys' fees the Court is awarding in this case are quite substantial.  But, the Court is of the firm opinion they are appropriate.

Given the malfeasance proven in this case, it is extremely important that cases such as this be filed.  And, "although [Rhodes] had the right to play hardball in contesting [Gifford's]claims, it is also appropriate that [Rhodes] bear the cost of [her unsuccessful]  strategy." *Burgess v. Premier Corp.*, 727 F.2d 826, 841 (9th Cir. 1984).

The attorneys in this case billed for a total of 2,013.887 hours in this case.  Thus, if just one attorney had billed that time, assuming forty hours of billing each week, it would have taken her/him a little over fifty weeks, or almost a year, to prepare for and try this case to verdict.  Alone.  Given the complexity and difficulty of this case, this seems like a reasonable amount of time to prepare for and try a case such as this.

"When plaintiff prevails on only some of the claims made, the number of hours may be adjusted downward; but where full relief is obtained, the plaintiff's attorney should receive a fully compensatory fee, and in cases of exceptional success, even an enhancement." *Rum Creek Coal Sales, Inc v. Caperton*, 31 F.3d 169, 174–75 (4th Cir. 1994) (citations omitted) (internal quotation marks omitted).

Given the Court's discussion above regarding Gifford's requested rate and number of hours billed, the Court concludes her request to be reasonable.  Her counsel prevailed on all of her claims here.  Therefore, they are fully entitled to "a fully compensatory fee." *Id*.

### B.  Whether Gifford is entitled to recover reasonable expenses

As an initial matter, the Court must address the untimeliness of Gifford's request for costs. Defendants note in their objections to Gifford's bill of cost that Local Civil Rule 54.03 provides that "A bill of costs shall be filed within the time limits set for Fed. R. Civ. P. 54(d)(2)(B) for

applications for attorney's fees. Noncompliance with this time limit shall be deemed a waiver of any claim for costs."

But then, Local Civil Rule 1.02 states that, "[f]or good cause shown in a particular case, the [C]ourt may suspend or modify any Local Civil Rule." The Court is of the opinion that, just as Gifford has shown excusable neglect/good cause for her late filing of her motion for attorneys' fees, she has, based on the same reasons, shown excusable neglect/good cause for the filing of her untimely request for costs.

Gifford states she "is entitled to recover reasonable expenses in the amount of $23,848.37 as a part of the attorneys' fees award pursuant to 42 U.S.C. § 1988." Gifford's Motion at 13. Gifford maintains "[a]ll [her claimed] expenses were incurred in the course of litigation[,] . . . were necessary for the successful resolution of the case. . . . [and] are normally charged by Evans Moore, LLC and Lovely Law Firm to clients for payment and were accrued in the course of providing legal services for [her]." *Id*. at 14.

Defendants, on the other hand, maintain she is entitled only to "costs taxable under 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d)." Defendants' Response at 11 (citation omitted) (internal quotation marks omitted). According to Defendants, "[t]he only taxable costs that the Plaintiff may recover are . . . "

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 . . . ; [and] (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828[.]

*Id*. at 11-12 (quoting 28 U.S.C. § 1920).

But, "[t]he great weight of authority in this circuit and others clearly establishes that a prevailing plaintiff is entitled to compensation for reasonable litigation expenses under § 1988." *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986). This includes "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). "Consequently," according to the Fourth Circuit, "the district court err[s] as a matter of law in evaluating the expense request . . . under 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)." *Daly*, 790 F.2d at 1084.

Although Gifford originally sought reimbursement on expert fees, in her Reply, she stated that "it appears there is conflicting authority as to whether expert fees are taxable in cases brought pursuant to 42 U.S.C. § 1983." Gifford's Reply at 16. *Compare Warfield v. City of Chicago*, 733 F. Supp. 2d 950, 955 (N.D. Ill. 2010) ("[B]ecause [the expert] was an expert reasonably used in this case, his fees are recoverable."), *with Corral v. Montgomery Cnty.*, 91 F. Supp. 3d 702, 721 (D. Md. 2015) ("[T]he terms of Section 1988 do not permit compensation for expert witness fees[ ]" in a Section 1983 action). "As such, . . . [Gifford] has elected to remove expert case expenses from the Itemized Expense Sheet and Bill of Costs." Gifford's Reply at 16.

Gifford initially failed to provide any documentation for her claimed costs. But, she has now filed it. She also submitted affidavits from her counsel attesting to the accuracy of the cost request. *See, e.g.,* Affidavit of James B. Moore III ¶ 9 ("(To the best of my knowledge, the time entries and case costs submitted . . . are a true and accurate representation of the work performed in this case and the costs paid by Evans Moore, LLC and Lovely Law Firm to fund this matter.").

Gifford notes that she "voluntarily limited her request to only those costs incurred after May 2019 although the case was litigated from 2016 through 2022 at significant expense." Giffords's Reply re Documentation ¶ 6.

Defendants have set forth several objections to Gifford's expense request.

First, they object to the request for payment of the expenses of Gifford's experts. And, although Gifford insists she is entitled to reimbursement for these expenses, she fails to provide any cases in which a court has granted such a request. The Court has been unable to find any such cases either.

Further, inasmuch as Section 1988 appears not to provide for the reimbursement of expert fees, it seems to be incongruous to say it would allow for the payment of expert expenses. *See* 42 U.S.C. § 1988 ("In awarding an attorney's fee . . . to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."). Thus, the Court will not award payment of those costs.

Defendants object to the payment of a $47 filing fee, too. It appears that fee was charged in error. Thus, the Court will direct the Clerk of Court to reimburse that fee to Gifford.

Defendants also object to the expense of $1,798.50 for a trial transcript and $1,272.65 for photocopies, stationery, envelopes, and postage. But, the Court deems those costs as proper.

Defendants' other objections do not merit discussion.

Defendants fail to object to Giffords's other claims for costs for which she provides "No Record." Thus, the Court will rely on Gifford's counsel's affidavits as a sufficient basis on which to award those costs. It has no reason to disbelieve counsel's sworn statements on the matter.

Except for the expert fees and expenses and the $47 filing fee, the Court is persuaded that all the other costs Gifford seeks are "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell*, 852 F.2d at 771. Thus, in light of Gifford's requests for costs, the documentation, and Gifford's counsel's affidavits, the Court will grant Gifford's request for costs, less the expert fees and expenses and the $47 filing fee.

### C. Whether Gifford is entitled to an award of post judgment interest

Gifford moves the Court to award post-judgment interest on all amounts awarded in this action. Defendants fail to address this request. Therefore, they have waived any argument they might have against this award. *See Russell*, 763 F.3d at 396 n. * (noting that failure to present legal arguments waives the argument).

"In contrast to the district court's discretion in the awarding of pre-judgment interest, federal law mandates the awarding of post-judgment interest." *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1031 (4th Cir. 1993)*.*

Under federal law, post-judgment interest "shall be allowed" and "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

Accordingly, Gifford is entitled to an award of post-judgment interest.

## IV.    CONCLUSION

In light of the foregoing discussion and analysis, Gifford's motion for attorneys' fees in the amount of $878,467.80, less the billing for more than two attorneys at a deposition, is **GRANTED**, her motion for costs, less her expert fees and expenses and the $47 filing fee, is **GRANTED**, and her request for post-judgment interest is **GRANTED**.

The Clerk of Court shall refund the $47 filing fee to Gifford.

**IT IS SO ORDERED**.

Signed this 29th day of March  2023, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE